# Richie, Appellant, *v.* Philadelphia.

*Public officers—Increase of salary—Constitutional officers—Legislative officers—Real estate assessors.*

The term "public officers" is not restricted merely to offices created by constitutional provisions, but applies to officers who exercise important public duties, have delegated to them some of the functions of government, and whose offices are for a fixed term and whose powers, duties and emoluments become vested in a successor, when the offices become vacant.

Real estate assessors in counties having a population of 1,000,000 or over are public officers within the meaning of sec. 13, art. III of the constitution of Pennsylvania, which provides that: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment." Such officers are not entitled to the benefit of the Act of May 31, 1907, P. L.

329, which increases the salaries of real estate assessors in counties having a population of 1,000,000 or over from $2,000 to $3,000.

Argued March 12, 1908. Appeal, No. 235, Oct. T., 1907, by plaintiff, from judgment of C. P. No. 4, Phila. Co., June T., 1907, No. 3,823, for defendant on case stated in suit of James E. Richie v. Philadelphia. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Case stated to determine the amount of plaintiff's salary as a real estate assessor of Philadelphia county.

From the case stated it appeared that on December 31, 1903, the board of revision of taxes of Philadelphia county appointed James E. Richie, the plaintiff, as one of the real estate assessors of the county. At that time the salary of real estate assessors was fixed by the act of April 12, 1873, at $2,000. On May 31, 1907, an act was passed which increased the salaries of such assessors in Philadelphia from $2,000 to $3,000 per annum. The case stated was to determine whether the plaintiff was entitled to the increased salary, or whether he was a public officer within the meaning of sec. 13 of art. III of the constitution, which forbade any increase of salary of a public officer after his election or appointment.

The court in an opinion by WILLSON, P. J., entered judgment for defendant on the case stated.

*Error assigned* was in entering judgment for defendant on the case stated.

*John C. Bell* and *Chester N. Farr, Jr.*, with them *Charles L. Brown*, for appellant.—The cases in this state draw a distinction between officers which are denominated "legislative" and officers which are denominated "constitutional," and hold that the term "public officers" in the section above referred to only applies to those holding such offices as can properly be termed constitutional offices: Commonwealth v. McCombs, 56 Pa. 436; Com. ex rel. v. Weir, 165 Pa. 284; Lloyd v. Smith, 176 Pa. 213; Com. v. Moir, 199 Pa. 534; Kilgore v. Magee, 85 Pa. 401.

Even should the court hold that the term "public officer"

in the constitutional provision now in question applies to legislative as well as constitutional officers, nevertheless, under the decisions in this state, the office of real estate assessor, as constituted in the city of Philadelphia, cannot properly be considered as a public office: Com. v. Black, 201 Pa. 433; Houseman v. Com., 100 Pa. 222; Com. ex rel. McElroy v. Booth, 16 Pa. Dist. Rep. 929.

*Ernest Lowengrund,* assistant city solicitor, with him *J. Howard Gendell,* city solicitor, for appellee.—An act changing the emoluments of public officers is held to be inapplicable to those in office, and whenever possible will be so construed as not to affect the then present incumbents: Apple v. Crawford County, 105 Pa. 300; Gulden v. Schuylkill County, 149 Pa. 210; Lloyd v. Smith, 176 Pa. 213; Lyons v. Means, 1 Pa. Superior Ct. 608; Fox v. Lebanon County, 4 Pa. C. C. Rep. 393; Rupert v. Chester County, 13 Pa. C. C. Rep. 342; Cornell v. Beaver County, 42 P. L. J. 262; Brooke v. Com., 86 Pa. 163; Lancaster County v. Fulton, 128 Pa. 48; Houseman v. Com., 100 Pa. 222; Com. v. Mathues, 210 Pa. 372.

The subject has frequently been considered by the lower courts; and whenever, either in the appellate or county courts the question has actually arisen, it has invariably been decided that all public officers, whether constitutional or non-constitutional, were within the scope of this section: Hancox v. Venango County, 20 Pa. C. C. Rep. 508; Com. v. Kromer, 4 Pa. C. C. Rep. 241; Rupert v. Chester County, 13 Pa. C. C. Rep. 342; Koller's Petition, 9 York L. R. 165; Com. v. Benfield, 5 Pa. Dist. Rep. 382; Evans v. Lloyd, 12 Pa. Dist. Rep. 380; Goodman v. Commissioners, 17 Pa. C. C. Rep. 393; Fox v. Lebanon County, 4 Pa. C. C. Rep. 393; Peeling v. York County, 113 Pa. 108; In re Harbor Master, 14 Pa. Dist. Rep. 719; Baldwin v. Phila., 99 Pa. 164; Com. v. Benfield, 5 Pa. Dist. Rep. 382.

OPINION BY HENDERSON, J., October 12, 1908:

By the Act of May 31, 1907, P. L. 329, the salary of the real estate assessors in counties having a population of 1,000,000

or over was increased from $2,000 to $3,000. The plaintiff was one of the assessors in the county of Philadelphia at the time the act referred to was approved and claims to be entitled to the increased compensation provided thereby. The defendant objects that the salary of the plaintiff cannot be increased during the continuance of his term because of sec. 13 of art. III. of the constitution, which provides that: "No law shall extend the term of any public officer or increase or diminish his salary or emoluments after his election or appointment." The question presented is whether an assessor of taxes in the county of Philadelphia is a public officer within the terms of the section quoted. The office of assessor of taxes was provided for by the Act of May 11, 1799, 3 Sm. L. 392, which directed that the citizens of every ward, township and district within the city of Philadelphia and in the several counties of the state should annually elect one citizen resident therein to be assessor for the term of one year, and two other citizens to be assistant assessors for the same time. The subjects of taxation were also designated and the procedure for the assessment of tax prescribed. The Act of April 15, 1834, P. L. 511, directed the assessors and assistant assessors at a meeting or meetings to be held by them to fix a uniform standard of value of the objects made taxable by law. This latter authority was transferred to the county commissioners by the Act of May 15, 1841, P. L. 393. Under the act of February 2, 1854, the qualified voters of each ward in the city of Philadelphia were authorized to elect two assessors who were required to perform in their respective wards all the duties which the laws of the commonwealth then enjoined on assessors and assistant assessors. The Act of March 14, 1865, P. L. 320, provided for the creation of a board of revision of taxes of the county of Philadelphia to be appo nted by the courts of common pleas. This board was authorized to revise and equalize assessments by raising or lowering the taxation, to rectify errors, to make valuations where they had been omitted, to require the attendance of assessors and other citizens before them for examination on oath, to hear all appeals and applications of the taxpayers; the decisions of the board being subject to an appeal to the court of

common pleas. An Act approved April 12, 1873, P. L. 715, changed the method of choosing assessors in Philadelphia and provided for their appointment by the Board of revision of taxes, power being given to that body to fill vacancies and to remove any assessor for incompetency, neglect of duty or refusal to faithfully perform the duties required by law. By subsequent statutes this board was given authority to divide the city into assessment districts and to alter the same. The statute prescribing the duties of the assessors requires them to make an annual list of taxable persons and property in their respective districts with a just valuation of the same, marking such property as in their opinion is urban, rural or suburban, to furnish an alphabetical list of taxable persons with their occupations and residences and to make return of the value of new buidings not included in their original assessments. They are also required under the Act of June 1, 1889, P. L. 420, to furnish copies of blank forms to all taxable persons and corporations for returns to be made under oath of personal property subject to state taxation, and to make return for any persons who refuse to furnish such statement under oath. The appellant's main proposition is that the term "public officer" only applies to offices existing by requirement of the constitution as distinguished from those created by the legislature and that as the office of assessor of taxes is not ordained by the constitution the legislature is not restrained from increasing the salaries of such officers. It cannot be disputed that there is a distinction between the situation of one who occupies a constitutional office and that of an officer whose position is created by statute. The former has an exemption from the control of the legislature which does not exist in favor of the latter, and if we were warranted in concluding that a "public officer" in contemplation of the constitution was only one whose existence that instrument provided for, the appellant's position would be clearly correct. But this view is too narrow when we take into consideration the object of this limitation of legislative power and the comprehensive language in which it is expressed. Many important offices exist which are not provided for by the constitution, and the number is in-

creasing from year to year. The duties of these officials are various and of some of them highly important. The compensation of many of them is large, their existence is in harmony with the constitution and we must assume that the framers of that instrument did not overlook the fact that the necessities or convenience of the commonwealth would call for an increase of public officers with various new duties. It is hardly to be supposed that the general expression of the constitution would have been used in view of the number of offices then in existence and likely to be created by the will of the legislature if the prohibition was only to apply to the comparatively small number whose existence was required by that instrument. It is more in consonance with the spirit of the section under consideration as well as with its terms to hold that all those exercising important public functions by authority of law are embraced within the description of "public officer"; and this, we think, is the effect of the adjudications on the subject. In Lancaster County v. Fulton, 128 Pa. 48, it was expressly decided that a county solicitor was a public officer within the meaning of sec. 13 of art. III. It is not pretended that that office is created by the constitution, and this case seems to us a sufficient authority to sustain the judgment of the court below on this point. The learned counsel for the appellant call attention to the fact that the constitutional provision was not discussed in that case and that this part of the opinion of the court had no direct bearing on the issue involved, but it was a pertinent statement of the law quite relevant to the matter under consideration and unequivocal in its meaning. Brooke v. Com., 86 Pa. 163, is also an authority to the same effect. The question there related to the term of office of a member of the select council of the city of Philadelphia. The discussion in the opinion clearly shows that the section we are considering is applicable to the office of a city councilman. In Houseman v. Com., 100 Pa. 222, it was held that a collector of delinquent taxes in the city of Philadelphia was a public officer subject to removal under sec. 4 of art. VI. of the constitution. It is manifest from the opinion of the court in that case and the reference therein to sec. 13 of art. III. of the

constitution that the terms "officers," "public officers," etc., were regarded as embracing state, county and municipal public officers. The same conclusion is implied in Com. v. Mathues 210 Pa. 372, and of the same purport is the decision in Pittsburg's Petition, 217 Pa. 227. The argument in the latter case that the legislation then under consideration would have the effect to extend the term of the councilmen in the city of Allegheny in violation of the third article of the constitution was met by a reference to Com. v. Moir, 199 Pa. 534, and Lloyd v. Smith, 176 Pa. 213, in which the overlapping of official terms and duties in the case of a substitution of a new system for one under which government had been previously carried on was justified as a temporary expedient and for that reason not unconstitutional. In all of these cases the reference is to offices not created by the constitution. The authorities presented by the appellant in support of this part of the case do not turn upon the section of the constitution which we are considering. They relate to the power of the legislature to abolish or diminish the term of an office not commanded by the constitution. There is a very clear distinction, however, between the power of the legislature to abolish or regulate an office which it created, the control over which is unlimited, and a restriction of the constitution over such power as applied to a particular subject. Even if it be considered inconsistent that the legislature may abolish an office the term of which it may not extend, or by such abolition entirely take away a salary which it may not increase, the restraint is nevertheless imposed by the paramount law of the state and is not to be got rid of by interpretation in the face of clear and unambiguous language. The power of the legislature to abolish an office not ordained by the constitution is unquestioned, for there is no restraint on such action, but as to both constitutional and legislative offices the command is that no law shall extend the term or increase or diminish the salary or emoluments after the election or appointment of the incumbent.

The second contention is that even if the constitutional prohibition is applicable to legislative as well as constitutional officers, nevertheless, a real estate assessor cannot be properly

considered a public officer. It is no doubt true that there are many persons engaged in the public service in subordinate positions exercising functions of such an inferior character that they could not be properly considered public officers within the meaning of the constitution; this much is indicated in Com. v. Black, 201 Pa. 433, and Houseman v. Com., 100 Pa. 222, in the latter of which the court expressed the opinion that policemen, firemen, watchmen and superintendents of public property under the orders of the municipal department were subordinate ministerial agents or employees, at the most, petty officers not intended to be embraced in the constitutional provision, and therefore subject to appointment and removal according to legislative regulation. Where, however, the officer exercises important public duties and has delegated to him some of the functions of government and his office is for a fixed term and the powers, duties and emoluments become vested in a successor when the office becomes vacant such an official may properly be called a public officer. The powers and duties attached to the position manifest its character. A consideration of the duties imposed upon real estate assessors leaves no doubt in our minds that the relation which they sustain to the maintenance of government is of such consequence that they should be considered public officers. The functions which they perform are of prime importance. Their duties are designated by statute; they serve for a fixed period; act under oath, the duties they perform are semi-judicial in character and their services are indispensable in the fiscal system as established by the state. It was decided in Williamson's Estate, 153 Pa. 508, that assessment is primarily the work of the assessors and the powers of the Board of revision extend only to the work of revision. If the assessor neglect to put a valuation on any property he has listed the board may supply the omission, and where property that should have been assessed has been overlooked by the assessor the board may place it on the list and fix its value. Their only authority to make a valuation exists where the assessors have omitted to make it. The assessors alone are invested with power to list the property and fix its value in the first instance. A proper discharge of their

duties is a matter of great consequence to the taxable inhabitants and involves judgment, intelligence, integrity and a wide knowledge of values. That the office was considered important is shown by the limited number of such officials in the city of Philadelphia and the considerable compensation accorded to them. The duties imposed place them in a position of such dignity and responsibility that they may well be considered public officers and as such subject to the operation of sec. 13 of art. III. of the constitution. We have given careful consideration to the very ingenious and able argument of the counsel for the appellant, but are not persuaded that the court below was in error in the conclusion reached.

The judgment is affirmed.